O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE SUNRIDER CORPORATION, et al.,<br><br>        Plaintiff(s),<br><br>    v.<br><br>BOUNTIFUL BIOTECH CORP, et al.,<br><br>        Defendant(s). | CASE NO. SACV 08-1339 DOC (AJWx)<br><br>**O R D E R** ADOPTING AMENDED REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |

Before the Court is the Amended Report and Recommendation of Magistrate Judge ("Report"), which was filed on October 8, 2010, and the objections thereto. The Report calls for the granting of plaintiff the Sunrider Corporation and plaintiff Sunrider Taiwan, Inc.'s motion for terminating sanctions, and further calls for the striking of defendant and counter-claimant Shun Sheng Chen, a.k.a. Sam Chen ("Chen")'s answer and an entry of default judgment against him. After reviewing the record in this action, the Report, and the objecting and replying papers, the Court concurs with and ADOPTS the findings of fact, conclusions of law, and recommendations contained in the Report after having made a de novo determination of the

portions to which objections were directed.

## I. Factual Findings

This case arises out of Sunrider, Sunrider Taiwan, and Sunrider Manufacturing (collectively "Plaintiffs")' allegations of copyright infringements by Chen and a former Sunrider employee, Steve Lee ("Lee") who allegedly established Bountiful Healthcare Technology Corporation ("BHTC"). The Report argues that Chen's responses throughout the discovery process merit the granting of terminating sanctions. The Report describes in excruciatingly careful detail all of the instances and examples of Chen's perjury, defiance of court orders, and incomplete discovery responses. After reviewing the record carefully, the Court agrees with the Magistrate Judge's findings of fact and does not find the need to repeat its findings in great detail. Thus, the Court summarizes the major factual findings here, but concurs with the Magistrate Judge's more detailed descriptions, particularly in regards to the discrepancies between Chen's various statements. The Court therefore limits its factual background section to responding to Defendants' objections and to summarizing the most critical factual findings.

Plaintiffs' filed their Fourth Amended Complaint on November 24, 2008 and served their first discovery request on Defendants on February 26, 2009. In his April 2009 responses, Chen objected to many of these requests, as he claimed that he did not have possession or control of BHTC documents. On May 11 2009, Chen agreed in a supplemental response to produce all documents "constituting, reflecting or relating to any agreements, whether written or otherwise" between Chen and BHTC. Report, 5. During a deposition on that same day, Chen testified that neither he nor his family members had ever had any ownership interest in BHTC and denied having any role in creating BHTC. Report, 6.

Following meet and confer discussions, on September 4, 2009 Plaintiffs filed a motion to compel the production of more documents, alleging that Chen actually retained an ownership interest in BHTC as an alter ego. Plaintiffs also requested monetary sanctions, pointing to evidence that Chen had publicly and privately represented BHTC as an executive officer or board member. *See* Report, 6. Under penalty of perjury, Chen declared that he was not and never had been a shareholder of BHTC and had never had any beneficial ownership interests in

1 BHTC, and insisted that the documents requested belonged solely to BHTC. Wilks. Decl. II ¶¶
2 8-9. As it was later shown once Plaintiffs received copies of documents obtained by its Taiwan
3 counsel from the Taipei government, at the time of the filing of the lawsuit, Chen and his wife
4 owned a 70% ownership interest in BHTC, and Chen's sister-in-law, Fang Chi Wu, aka "Annie
5 Wu," retained a shareholder interest as well. Furthermore, the number of shares owed by Chen
6 and his wife declined significantly just one week after the filing of the lawsuit, and just as the
7 number of shares of Annie Wu increased. *See* Report, 8-9.

### A. The January 25, 2010 Order

9 On January 25, 2010, after denying Plaintiff's request for sanctions against Chen, the
10 Magistrate Judge ordered Chen to serve supplemental responses providing information known
11 by him or available to him. Nonetheless, the Court found that Plaintiffs' evidence of Chen's
12 perjury was insufficient to outweigh his testimony. Report, 8. The Order was specific in the
13 requested documents, but on February 5, 2010, Chen responded by insisting that the relevant
14 documents were in BHTC's possession and would not be provided to Chen following his
15 resignation. *See* Wilks Decl. II ¶ 13. Plaintiffs moved for reconsideration of the January Order
16 in April 2010 and requested an additional deposition of Chen as well as monetary and issue
17 preclusion sanctions, and a striking of Chen's answer. On April 20, 2010, Chen declared that he
18 did not know how or why the shareholder rosters had been prepared and offered that BHTC had
19 listed him and his wife as shareholders out of gratitude, but insisted that they had never accepted
20 any offer to be shareholders. Wilks Decl. I, Ex. B, ¶¶ 1-5.

21 Chen's counsel insists that he did not violate the January 25, 2010 Order because he
22 served supplemental responses and "tried to obtain documents" from BHTC. However, in his
23 later deposition, Chen admitted that he had agreed with BHTC's chairman's suggestion not to
24 produce documents. *See* Wilks Decl., Ex E. at 456-460. Furthermore, Chen failed to comply
25 with requirements for turning over "all unprivileged responsive documents in his possession,
26 custody, or control" by February 5, 2010, and failed to respond to the January 25, 2010 Order to
27 answer questions related to the potential spoliation of evidence.

### B. The May 26, 2010 Order

1     On May 26, 2010, the Court granted Plaintiffs' requests for additional depositions of
2 Chen and demanded that Chen supplement his responses, and granted Plaintiffs attorney fees.
3 The Court explained that Chen's testimony appeared to have been untruthful, as it was disputed
4 by the recently received records that revealed not only that he had been a majority shareholder of
5 BHTC but that any shareholder had access to the records which he claimed he could not access .
6 Order filed May 26, 2010 at 1. Indeed, later documents produced by the Taipei government
7 revealed that Chen made "payments for shares" of $2,000,000 in New Taiwan dollars, and that
8 he and his wife were not only shareholders but made cash deposits of millions of New Taiwan
9 dollars. Wilks Decl. I, Ex. D at 58-85. Furthermore, the documents revealed that Chen and his
10 wife abandoned their shareholder status within two weeks of Plaintiffs' suit and that Annie Wu
11 had been a BHTC director and a shareholder at various points, and even served as a chairman in
12 August 2008. *See* Wilks Decl. I, Ex. D at 101.
13     In granting sanctions, the Court emphasized that Chen's "rearranging" of his affairs in
14 order to avoid having to produce documents was akin to spoliation of evidence. May 26, 2010
15 Order, Docket 152 at 2. The Court warned Chen that though it was denying Plaintiffs' request
16 for harsher sanctions, any failure to comply with its order would result in further sanctions
17 "potentially including a further monetary award, issue or evidence preclusion, or entry of
18 judgment by default." *Id.* at 3.
19     As the Report details, however, Chen failed to comply with the May 26 Order, and
20 instead provided an incomplete production of documents. Report, 33-35. Chen's counsel argues
21 in its opposition to Plaintiff's Motion that Chen did not disobey the May 26, 2010 discovery
22 Order because Chen had submitted to deposition, supplemented his response, and with one
23 exception, produced all the documents he had obtained from BHTC. The Court is skeptical of
24 such defenses; as the Report and Plaintiffs note, Chen's supplemental responses contained a
25 "surprisingly small" number of documents." Report, 33-34 (noting that Chen produced only 200
26 pages, 136 of which Chen knew Plaintiffs already possessed). The supplemented documents
27 also neglected to include the "categories of responsive documents that one would fully expect to
28 be maintained in the ordinary course of BHTC's business." *Id.* (including internal accounting

1  records, BHTC research documentation, records of BHTC's past and present distributors, etc.).
2  Chen also produced additional filings that included a distributor list of 283 of Sunrider's
3  distributors in Taiwan, without offering any sort of explanation for why Plaintiffs had previously
4  only known about seventeen of those distributors. *See* Wilks Decl. II ¶¶ 9-10.

5  Perhaps most significantly, Annie Wu's supplementary declaration admitted that as
6  discovery was pending in September 2009, BHTC destroyed documents. Wu Supplemental
7  Decl. ¶ 4. Annie Wu testified that "non-essential documents were discarded if they were
8  deemed to serve no purpose." *Id.* Chen's counsel later admitted that it was impossible to
9  determine which documents had been destroyed. This constituted spoliation of evidence.

10  Defense counsel argues that there was no spoliation of evidence by Chen because of
11  documents that BHTC discarded. It insists that there was no evidence that any of the discarded
12  documents were relevant to any discovery requests, and, furthermore, that Chen could not be
13  responsible for BHTC's acts. The Court rejects this argument. To start, it is ludicrous to suggest
14  that discarding documents is permissible during the course of a discovery request simply because
15  the plaintiff cannot show that the documents were relevant; that logic would allow the
16  destruction of many highly relevant documents of which a plaintiff simply had not known by
17  virtue of the discovery request not having been complied with yet. Moreover, it seems all but
18  obvious that, as Plaintiffs' Response notes, the documents that BHTC destroyed must have
19  included necessary records to aid the company it its tax returns, as well as other critical financial
20  documentation. *Id.* In terms of whether Chen had the requisite culpability and control over the
21  discarded documents, it is clear from Chen's former status as a majority shareholder in BHTC
22  that he had the necessary "control" over the BHTC documents. More significantly, Chen filed
23  his false declaration stating that he had never been a shareholder of BHTC at the same time as
24  Plaintiffs' original motion to compel was filed. Chen Decl, Docket 53, ¶ 7.

25  **C.  Annie Wu's July 2, 2010 Declaration**

26  Judge Wistrich sustained Plaintiffs' objection to Annie Wu's July 2 declaration,
27  based on a lack of foundation under Rule 901 of the Federal Rules of Civil Procedure. Report,
28  21. Plaintiffs had objected to the admission of the declaration because there was no evidence

5

that Annie Wu had actually read and understood her declaration because the declaration did not include a Chinese translation nor any evidence that Wu had been given a Chinese translation of the document. Report, 21. Though Chen argues that proper foundation had been laid under Rule 901 because Annie Wu had signed a statement declaring under penalty of perjury that she had reviewed and discussed her declaration with Chen's counsel, such a statement was meaningless if she could not read or understand that document. *See Jack v. Trans. World Airlines, Inc.*, 854 F. Supp. 654, 659 (N.D. Cal. 1994). The Court is not convinced that Wu actually read those words or understood their implications[1], and, thus, there was no foundation laid under Rule 901.[2] Indeed, despite Chen's counsel's assurances that he would file the Chinese translation in court, the Report indicates that he failed even to attempt to do so. Report, 22. Furthermore, Annie Wu's declaration, even were it to be considered by this Court, also fails to resolve many of the inconsistencies that emerge from her and Chen's accounts. *See* Report, 26-28 (detailing the inconsistencies that remain even when considering Annie Wu's declaration, including the fact that Wu claimed to have told Chen she had purchased 400,000 BHTC shares and was giving them to Chen and his wife, even though Chen had earlier testified that that he had no knowledge that he or his wife were listed as BHTC shareholders) . Certainly, even if her declaration were admitted as evidence, it would not negate the unreliability of Chen's prior statements.

### D. Summary of Factual Basis for Sanctions

Collectively, the evidence shows and the Report describes in detail the ways in which Chen repeatedly provided inconsistent information and perjured himself before the Court, particularly in regards to whether he and his family members were shareholders of BHTC and

---

[1]The Court does not find convincing Chen's counsel's insistence that an unnamed, non-translator assistant translated the declaration for Wu's review since there is no authenticated evidence of that translation.

[2]The Court also rejects Chen's argument that the July 15 declaration must also be rejected, since that declaration was an admission that Wu, Chen, and BHTC had discarded documents–which was confirmed by other evidence and by Chen's counsel. *See* Transcript, 28, 77-79.

1  whether he had any control over his shareholder status; whether he or family members paid any
2  money for their ownership interests in BHTC; whether he had access to documents requested
3  through discovery; and whether he or his wife had ever wired funds to BHTC.  The Court
4  disagrees with Chen's characterization of the perjury "theory" as resting solely on Plaintiffs'
5  contention that Chen made two wire transfers from an international account of Chen's to Annie
6  Wu's personal accounts in July 2007 and January 2008 and used the funds to purchase the
7  BHTC shares that were issued to Chen and his wife.  Though those wire transfers were, indeed,
8  not adequately explained by Chen, the Court does not find that these are the basis of the perjury
9  allegations; rather, Chen demonstrated repeated inconsistencies throughout his various
10 statements as discussed.

11    As described above and as noted in Judge Wistrich's January 2010 Order and Mary 2010
12 Order for additional discovery and sanctions, Chen also repeatedly evaded his discovery duties
13 and disobeyed court orders.  Chen's June 7, 2010 limited number of supplemental
14 responses–including mostly documents he knew Plaintiffs already had and missing documents
15 BHTC would be expected to have-- did not explain or resolve the problems with his earlier
16 responses, and he produced BHTC documents without offering an explanation for why he had
17 not offered them sooner.   Finally, there is no reason to believe that, to this day, Chen has even
18 turned over all the documents he was required to produce.  Chen's counsel has represented that
19 Annie Wu was responsible for turning over responsive documents at BHTC, but she has
20 admitted to failing to disclose certain documents and has not maintained that she has produced
21 all responsive documents.  *See* Annie Wu Decl., Docket 201,  ¶¶ 17-18.  Chen himself has also
22 not supplemented his discovery responses sua sponte under Rule 26.  Though his counsel
23 maintains that there is no reason to believe that Chen had anything he was required to
24 supplement, he also admitted that neither he nor Chen had returned to check to see if there were
25 additional documents they were required to produce under Rule 26.  Transcript of July 16, 2010
26 motion hearing at 51-54.

27    **II. Legal Standard**
28    Federal Rule of Civil Procedure 37 allows for judicial discretion to impose a "wide range

7

1 of sanctions when a party fails to comply with the rules of discovery or with court orders
2 enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).
3 These discovery rules, under Federal Rule of Civil Procedure Rule 26 require parties to
4 "supplement or correct" responses to discovery requests "in a timely manner if the party learns
5 that in some material respect the disclosure or response is incomplete or incorrect, and if the
6 additional or corrective information has not otherwise been made known to the other parties
7 during the discovery process or in writing," or "as ordered by the court." Fed. R. Civ. P.
8 26(e)(1)(A)-(B).

9       A court responding to a party's failure to comply with these discovery obligations can
10 further impose additional "just orders" that may "direct[] that the matters embraced in the order
11 or other designated facts be taken as established for purposes of the action . . . .; (ii) prohibit[]
12 the disobedient party from supporting or opposing designated claims or defenses, or from
13 introducing designated matters in evidence; (iii) [strike] pleadings in whole or in part; (iv) stay[]
14 further proceedings . . . ; (v) dismiss the action or proceeding in whole or in part; or (vii) treat[]
15 as contempt of court the failure to obey any court order except an order to submit to a physical
16 or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

17       However, because there is a strong preference for adjudicating cases on their merits,
18 courts may only dismiss a case or enter a default judgment as a sanction where the violation is
19 "due to willfulness, bad faith, or fault of the party." *United States ex rel. Wiltec Guam, Inc. v.*
20 *Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir. 1988) (quoting *Wyle*, 709 F.2d at 589).
21 Dismissal is considered an appropriate response "in extreme circumstances" when a party has
22 "engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle*, 709
23 F.2d at 589. In order to make determinations about the party's conduct, a court may "make
24 inferences and credibility determinations from evidence received." *Wyle*, 709 F.2d at 592.

25       Furthermore, the Supreme Court has clarified that a district court also has the inherent
26 power to issue sanctions to parties or attorneys who act in bad faith. *See Chambers v. NASCO*,
27 501 U.S. 32, 45-46, n.10 (1991) (noting that district courts have the inherent authority to dismiss
28 a lawsuit or assess attorney's fees at their discretion). As the Ninth Circuit explained, "bad faith"

accounts for "a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991(9th Cir. 2001).

**III.    Legal Analysis**

The Court here finds that Chen's conduct was, indeed, willful and meritorious of sanctions. Chen repeatedly changed his story, perjured himself, and evaded Court orders. Though the Court recognizes that sanctions are appropriate only in "extreme circumstances," *Wyle*, 709 F.2d at 589, it finds that the present matter qualifies as such a circumstances.

The Ninth Circuit has consistently employed a five factor test to determine whether dismissing a case as a sanction is appropriate. The factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Exxon Valdez,* 102 F.3d 429, 433 (9th Cir. 1996); *see Valley Eng'rs Inc. v. Elec. Eng'g* Co., 158 F.3d 1051, 1057 (9th Cir. 1988), *cert denied* 526 U.S. 1064 (1999). Because the first two factors almost always weigh in favor of granting default judgment and the fourth factor against granting default judgment, the key factors in determining whether a default judgment should be entered are the risk of prejudice and the availability of less drastic sanctions. *See Valley Eng'rs* , 158 F.3d at 1057; *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990); *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990); *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987).

Applying the Ninth Circuit's five-factor test to the present matter yields a conclusion that sanctions are appropriate in the present matter.

**A.    The Public's Interest in Expeditious Resolution of Litigation**

As Chen's counsel concedes, this factor always favors imposing sanctions. *Computer Task Group v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (affirming a district court's granting of terminating sanctions); *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002), *cert denied* 538 U.S. 909 (2003) ("The public's interest in expeditious resolution of litigation always favors dismissal.") (citing *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Even

9

were this not the case, Chen's conduct caused considerable delay in this case: the trial had to be continued, Plaintiff was forced to conduct discovery motions after the discovery cut-off date of November 2009, and the multitude of sanctions motions have frustrated the Court's and the parties ability to resolve the litigation.

### B. The Court's Need to Manage Its Docket

This factor, too, falls in favor of granting sanctions. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *cert denied*, 506 U.S. 915 (1992) ("It is incumbent upon us to preserve the district courts' power to manage their dockets without being subject to the endless vexatious noncompliance of litigants . . . ."). Like the offending party in *Ferdik*, Chen's actions have clogged up both this Court's and Judge Wistrich's dockets by consuming more than his share of judicial time and resources. Chen's refusal to comply with simple and straightforward discovery requests have posed unnecessary hurdles in the resolution of this action and in the Court's ability to manage its many other cases.

### C. Prejudice to the Party Seeking Sanctions

This is among the most contentious of the factors, and the one defense counsel most strenuously objected to, but it nonetheless favors imposing sanctions. To start, it is generally understood that even "[s]tanding alone, failure to produce documents as ordered . . . is considered sufficient prejudice to justify" terminating sanctions. *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 151 F.R.D. 346, 351-353 (N.D. Cal. 1993) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)(affirming the imposition of sanctions when defendant did not produce the responsive evidence until two months before trial). As the Court's factual findings above emphasize, Chen failed to turn over documents repeatedly, and to this day has not ensured that all documents have been produced.

There is no doubt that Chen's discovery abuses have impacted Plaintiffs' case in preparation for trial and may impact any resulting decision. Annie Wu's admission of the destruction of documents, which is undisputed, included the destruction of distributor applications, which Plaintiffs explained are "critical" to their case. *See* Plaintiffs' Response, 22. Plaintiffs also settled with former defendant Steve Lee without any knowledge of bank records

1  that showed that funds deposited by Lee and his wife were later transferred to BHTC. As
2  Plaintiffs stated:

3      Had [Plaintiffs] gotten these documents at the outset, there are so many things we
4      would have done differently. Additional depositions, gone to Taiwan–I'm not sure
5      if we ever would have settled with Steve Lee. We would have sought bank records.
6      Certainly our expert would have taken a completely different approach.

7  *See* Transcript of July 16, 2010 hearing at 24.
8  Though Defense counsel argues that Plaintiffs' settlement with Lee was confidential and that
9  "[o]ther than Plaintiffs, no one really know [sic] why Plaintiffs had settled with Lee," Chen's
10 Objection, at 14, Plaintiffs' views are the ones at issue, and the fact that their settlement
11 decisions were affected in some way by Chen's misconduct is dispositive.

12     Indeed, Plaintiffs' expert damage calculation was affected by their previous awareness of
13 only seventeen BHTC distributors, when in fact, as they learned after expert discovery had
14 closed, there were 283 Sunrider distributors who may have joined BHTC. Along the same lines,
15 Chen has still not produced accounting records to show BHTC's sales and profits, which also are
16 relevant to Plaintiffs' calculations of damages. Thus Plaintiffs funded a report based on
17 incomplete documents.

18     Plaintiffs conducted much of their discovery while relying on incomplete information.
19 They were forced to conduct depositions without key documents such as bank records that Chen
20 failed to produce until all discovery deadlines had passed. *See* Wilks Decl. ¶ 24-30. The late
21 production of documents did not correct the prejudice already imposed. *See Wyle*, 709 F.2d at
22 591; *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)
23 ("Belated compliance with discovery orders does not preclude the imposition of sanctions. Last-
24 minute tender of documents does not cure the prejudice to opponents . . . .").

25     The prejudice suffered by Plaintiffs could have been avoided, but Chen willfully thwarted
26 the discovery process. This case parallels *Wyle*, in which the Court upheld a district court
27 judge's imposition of terminating sanctions. 709 F.2d. In *Wyle*, the court dismissed a party's
28 complaint after it falsely denied certain charges and failed to comply with the court's discovery

1 orders regarding the production of certain documents. *Id.* The sanctioned party objected,
2 arguing that the court unreasonably inferred from the evidence to find its conduct willful, but the
3 Court rejected that argument, noting that the evidence supported a finding of willfulness. Here,
4 the repeated failures of Chen to comply with discovery and Court orders supports a finding that
5 he acted willfully. Indeed, *Wyle* made clear that a court can find that a party acted willfully to
6 subvert discovery even when it is not certain whether some of the withheld documents existed.
7 709 F.2d at 590-91.

### D.     Public Policy Favoring Disposition on the Merits

This factor by its very title falls against the imposition of terminating sanctions. *See Pagtalunan*, 291 F.3d at 643 (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). Nonetheless, Chen has not met his obligation to "move towards [a disposition on the merits] at a reasonable pace" nor has he "refrain[ed] from dilatory and evasive tactics." *In re Eisen*, 31 F.3d 1447, 1454 (9th Cir. 1994) (quoting *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991)).

### E.     The Availability of Less Drastic Sanctions

The fifth factor looks to whether there are less drastic sanctions on which the court could rely. Defense counsel argues that Judge Wistrich "failed to consider lesser sanctions," Chen's Objection, at 16, but that is simply not accurate. In this case, Judge Wistrich imposed lesser sanctions throughout the litigation, as part of his effort to gain the compliance of Chen. Nonetheless, Chen's defiance of the discovery process has been persistent.

In determining whether less drastic sanctions are available, court consider: (1) "whether the court explicitly discussed alternative sanctions," (2) "whether it tried them," and (3) whether it warned the recalcitrant party about the possibility of dismissal." *Malone v. U.S. Postal Serv.*, 833 F.2d 128 (9th Cir. 1987). Judge Wistrich, on several occasions, discussed and tried alternative sanctions. Plaintiffs first requested the imposition of terminating sanctions at the May 10, 2010 hearing. Judge Wistrich considered striking part of Chen's answer in May 2010 and discussed requiring him to be deposed again in July 2010. *See* Hearing Transcript, May 10, 2010 at 32-33; Hearing Transcript, July 16. 2010 at 34-91. During the July 16, 2010 hearing, the

1 Court heard arguments from both sides on the merits of imposing alternative sanctions.

2 The Court met the second prong under the *Malone* test when it imposed lesser attorney 3 fee sanctions in May 2010. It met the third prong when it warned Chen that failure to comply 4 with the May 2010 Order placed him in jeopardy of receiving sanctions as severe as a default 5 judgment. *See* Wilks Decl. II at 171. Indeed, the Court's May 26, 2010 Order stated, "Chen is 6 cautioned that failure to comply with this order may result in the imposition of additional 7 sanctions, potentially including a further monetary award, issue or even preclusion, or entry of 8 judgment by default." May 26, 2010 Order, Docket 152. It is clear that Judge Wistrich's 9 imposition of sanctions prior to dismissal coupled with warnings about the possibility of future 10 sanctions is sufficient to satisfy the *Malone* test. *See Adriana*, 913 F.2d at 1412-1413; *Valley* 11 *Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057-1058 (9th Cir. 1998) (noting that the 12 judge's imposition of lesser sanctions and later warnings on the record that continued 13 noncompliance with discovered would result in a dismissal were sufficient to have met the 14 requirement of considering alternatives).

15 Moreover, as Judge Wistrich explained in the Report, Chen's continuous and successful 16 efforts to thwart Plaintiffs' and the Court's ability to prepare for trial merit the harshest form of 17 sanctions available. Judge Wistrich considered lesser sanctions, and implored Chen repeatedly to 18 comply with discovery to no avail. The Court has lost any faith in Chen's willingness to comply 19 with both its procedures as well as with basic standards of fairness to the parties and to the 20 Court. Chen has revealed a total disrespect for the procedures that govern our judicial system. 21 Nothing short of terminating sanctions is appropriate; indeed, the Defense fails to distinguish 22 adequately Chen's violations from others in which courts have granted similar outcomes. This 23 case seems perfectly in line with the notion that terminating sanctions "are appropriate where a 24 'pattern of deception and discovery abuse ma[ke] it impossible' for the district court to conduct a 25 trial 'with any reasonable assurance that the truth would be available.'" *Valley Eng'rs*, 158 F.3d 26 at 1057-58 (quoting *Anheuser-Busch, Inc*, 69 F.3d at 352). Chen has undoubtedly shattered the 27 faith of Plaintiffs in the integrity of the adversarial system, and to permit him to go forward in 28 the litigation when "there can never be assurance of proceeding on the true facts" would be

unjust. *See Valley Eng'rs*, 158 F.3d at 1058.

**IV. Disposition**

For the foregoing reasons, the Court concurs with and ADOPTS Magistrate Judge Wistrich's Report and Recommendation.

IT IS SO ORDERED.

DATED: November 3, 2010

_____
DAVID O. CARTER
United States District Judge

14